## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANTHONY HYGINUS**                                   **CIVIL ACTION**

**VERSUS**                                                 **NO. 23-2895**

**OCHSNER CLINIC, LLC, ET AL.**               **SECTION "O"**

## ORDER AND REASONS

Before the Court in this employment-discrimination case is the motion[1] of Defendants Ochsner Clinic, LLC, Ochsner Clinic Foundation, Ochsner Health Foundation, L.L.C., and Ochsner Health Network (together, "Ochsner") for summary judgment dismissing Plaintiff Anthony Hyginus's claims under Federal Rule of Civil Procedure 56. For the reasons that follow, Ochsner's motion is **GRANTED**.

## I.   BACKGROUND

Anthony Hyginus, a Black man from Nigeria, worked for Ochsner as a hospital chaplain. Ochsner received complaints that he flirted with nurses and tried to give one an unwanted hug. So Ochsner issued him a "consult" and reminded him to act professionally. Ochsner later received reports that he yelled at a subordinate and made inappropriate remarks to several female nurses. So Ochsner placed him on "progressive discipline" and warned him he could be fired for further unprofessionalism. But Ochsner received more corroborated complaints about his conduct—one from a patient's mother, and another alleging he violated a supervisor's order. Ochsner then fired him for a pattern of unprofessionalism. He sued, claiming discrimination, harassment, and retaliation based on his race and national origin.

---

[1] ECF No. 91.

The background facts in this section are drawn primarily from the properly supported facts listed in Ochsner's Local Civil Rule 56.1 statement.[2] With limited exceptions, those facts are "deemed admitted" for purposes of Ochsner's motion because Hyginus fails to properly "controvert[ ]" them in his Local Civil Rule 56.2 statement of disputed facts.[3] LOCAL CIVIL RULE 56.2; *Wimsatt v. Jaber*, No. 22-CV-1012, 2024 WL 2187872, at *2 n.10 (E.D. La. May 14, 2024) (Long, J.) (facts not properly controverted are admitted under Local Civil Rule 56.2), *aff'd*, 2025 WL 711120 (5th Cir. Mar. 5, 2025) (per curiam). Indeed, Hyginus's Local Civil Rule 56.2 statement responds clearly and directly to just two of the 109 paragraphs of properly supported facts listed in Ochsner's Local Civil Rule 56.1 statement.[4] And even those two paragraphs are not properly controverted, because Hyginus fails to cite "particular parts of materials in the record" to support his assertion that any fact contained in those paragraphs is genuinely disputed.[5] FED. R. CIV. P. 56(c)(1)(A).[6]

---

[2] *See* ECF No. 91-1.

[3] *See* ECF No. 97-1.

[4] *Id.* at ¶¶ 21–23 ("den[ying]" the facts identified in paragraphs 37 and 38 of Ochsner's Local Civil Rule 56.1 statement).

[5] *See id.*

[6] In his Local Civil Rule 56.2 statement, ECF No. 97-1, Hyginus cites record evidence to support only these facts: (1) Hyginus "vehemently den[ies]" that he made "inappropriate comments to a patient's grieving mother" and insists that "the patient's mother was distraught after being informed that her son was braindead" and that he "gently told this grieving mother that her son would not want her to hurt herself," *id.* at ¶¶ 5, 7, 8; (2) Hyginus "was never assigned to the Medical Intensive Care Unit on the sixth floor of the hospital, but [he] would occasionally work there during times on call or over the weekend when [he] was the only [c]haplain available," *id.* at ¶13; (3) Hyginus received "an [e]mployee [c]onsult [f]orm stating that a lack of professionalism in his conversations had been reported to Ochsner's leadership," the contents of which he "vehemently dispute[s]," *id.* at ¶ 15; (4) Hyginus texted Katie Daher, Ochsner's AVP for Guest, Volunteer, and Spiritual Care Services, in November 2022, "to inform her that [he] was constantly discriminated [*sic*] on the 6th floor west," *id.* at ¶ 25; (5) an Ochsner employee who "assisted the [c]haplains in matters related to decedent care[ ] received medical care at Ochsner" "[s]ometime in early January of 2023," an email "directed [c]haplains only to visit this employee if she first gave them permission to do so," and "it would be a stretch to consider" Hyginus's "incidental contact" with her "a patient visit," *id.* at ¶¶ 26, 28, 32, 33 (quotation omited). None of these facts is genuinely disputed and material to Ochsner's motion.

Along similar lines, Hyginus's summary-judgment submissions largely violate Federal Rule of Civil Procedure 56(c)(1)(A). That rule requires Hyginus to cite "particular parts of materials in the record" to show that a material fact is genuinely disputed. FED. R. CIV. P. 56(c)(1)(A). With limited exceptions,[7] Hyginus's summary-judgment response fails to do so. And for those few assertions that are supported by citation to "particular parts of materials in the record," *id.*, Hyginus fails to "articulate the precise manner in which that evidence supports his . . . claim[s]," *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quotation omitted). The Court emphasizes that it need not "sift through the record in search of evidence to support [Hyginus's] opposition." *Id.* (quotation omitted). So even if there were evidence somewhere in this summary-judgment record disclosing a genuine dispute of material fact, Hyginus's "fail[ure] even to refer to [that evidence] in [his] response to the motion for summary judgment" means "that evidence is not properly before the [Court]." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).[8] Having settled on the source of the facts, the Court recites the material, undisputed ones.

---

[7] In his summary-judgment response, ECF No. 97, Hyginus cites evidence to support only these facts: (1) Hyginus filed his Equal Employment Opportunity Commission ("EEOC") complaint on May 22, 2023, *id.* at 4; (2) Nursing Unit Director Lindsey Willis reported that Hyginus had been inappropriately flirting with female nurses and had made a dismissive comment to a nurse and a patient's wife, *id.* at 7; and (3) Chaplain Supervisor Melissa Carnall Fauci gave Hyginus "a generally positive initial performance evaluation," *id.* None of these facts is genuinely disputed and material.

[8] Hyginus attaches a 73-paragraph affidavit as an exhibit to his summary-judgment response. ECF No. 97-2. But Hyginus does not cite the affidavit in his summary-judgment response or otherwise "articulate" in the response "the precise manner in which" any assertion in the affidavit supports any of his claims or creates a genuine dispute of material fact on any issue. *Carr*, 866 F.3d at 601 (quotation omitted). *See* ECF No. 97. Because Hyginus "fails even to refer to" the affidavit in his summary-judgment response, the affidavit "is not properly before the [Court]." *Malacara*, 353 F.3d at 405.

Anthony Hyginus, a Black man from Nigeria, worked as a full-time chaplain for Ochsner from November 2021 until January 2023, when Ochsner fired him for "repeated instances of unprofessional behavior."[9] As a chaplain at Ochsner's main hospital, Hyginus provided spiritual care support to patients and their families, supported clergy members called to the hospital at a patient's request, maintained comprehensive reports, and submitted daily reports for team follow ups.[10] Hyginus was assigned to the "neuro critical area" in the hospital's west tower, but he would go to the sixth floor of the west tower on weekends and when he was on call.[11] Hyginus reported to Ochsner Chaplain Supervisor Melissa Carnall Fauci, who reported to Katie Daher, Ochsner's AVP for Guest, Volunteer, and Spiritual Care Services.[12]

Hyginus received Ochsner's professionalism and anti-discrimination policies when he started work.[13] The professionalism policy required Ochsner employees to "maintain a level of professionalism that fosters a respectful and functional environment that supports the high quality of care" offered at Ochsner.[14] Hyginus knew he could be fired for violating the professionalism policy.[15] And Hyginus knew about Ochsner's procedures for reporting alleged discrimination and harassment.[16]

About two months after Hyginus started full-time work, in January 2022, Daher received a report that Hyginus "inappropriately flirt[ed] with female nurses

---

[9] ECF No. 91-1 at ¶¶ 4–8; ECF No. 91-5 at ¶¶ 23–24.
[10] ECF No. 91-1 at ¶ 17.
[11] ECF No. 91-3 at 6.
[12] ECF No. 91-1 at ¶¶ 2, 6; ECF No. 91-3 at 5.
[13] ECF No. 91-1 at ¶¶ 9, 14.
[14] *Id.* at ¶ 10.
[15] *Id.* at ¶ 13; ECF No. 91-3 at 8.
[16] ECF No. 91-1 at ¶ 16.

and made a dismissive comment to a nurse and a patient's wife."[17] Daher also "learned of a report" that Hyginus tried to "give a different nurse an unwanted hug."[18]

Daher referred those reports to Ochsner's employee-relations department for an investigation.[19] As part of the investigation, an employee-relations consultant interviewed Hyginus.[20] Hyginus recorded the conversation.[21] At no point in the recording does Hyginus make any allegation about discrimination or harassment.[22]

After the employee-relations investigation into those reports, Daher and Fauci issued Hyginus an "Employee Consult Form" that reminded Hyginus of his obligation to act professionally and informed him that "[f]ailure to improve performance, or comply with Ochsner's policies and procedures, will result in formal disciplinary action, up to and including termination of employment."[23] Hyginus, for his part, denies that he engaged in the conduct described in the reports that spurred the investigation.[24] But Hyginus does not dispute that the reports were, in fact, made.[25]

About five months after receiving those reports, in June 2022, Daher received more complaints about Hyginus's conduct.[26] The complaints came from a chaplain resident assigned to shadow Hyginus.[27] Like Hyginus, the chaplain resident is from

---

[17] ECF No. 91-5 at ¶ 8.
[18] *Id.*
[19] *Id.* at ¶ 10.
[20] ECF No. 91-1 at ¶ 25.
[21] *Id.*; ECF No. 91-6.
[22] ECF No. 91-1 at ¶ 26; ECF No. 91-6.
[23] ECF No. 91-5 at ¶¶ 10–11; ECF No. 91-3 at 45.
[24] ECF No. 91-3 at 11.
[25] *Id.*
[26] ECF No. 91-5 at ¶ 12.
[27] *Id.*; *see also* ECF No. 91-4 at 17.

Nigeria.[28] In a complaint to Ochsner, the chaplain resident claimed that Hyginus yelled at her and accused her of being unprofessional.[29] And the chaplain resident told Ochsner that she "want[ed] these accusations and harassment officially addressed because [Hyginus's] disrespectful attitude is affecting my ministry."[30]

About two months after receiving the chaplain resident's complaints, in August 2022, Daher received another report about Hyginus's alleged misconduct.[31] This time, a nurse reported that Hyginus asked her if she was married and directed a sexually charged comment and gesture towards her.[32] Daher referred the nurse's complaint to the employee-relations department for an investigation.[33] During a phone call that Hyginus recorded, Daher told Hyginus that his alleged misconduct was being investigated.[34] At no point in the recording does Hyginus allege disparate treatment based on his race or national origin or mention any discriminatory comments.[35]

During the employee-relations investigation into that report, Daher learned about three more reports of alleged unprofessionalism by Hyginus: (1) a nurse reported overhearing Hyginus asking another nurse for her phone number; (2) a nurse reported that Hyginus told her "men could bring home STDs and you won't be able to smell"; and (3) another nurse reported that Hyginus asked her "what bars he could go to in order to meet women."[36] An employee-relations consultant met with

---

[28] ECF No. 91-3 at 14.
[29] ECF No. 91-4 at 17.
[30] *Id.*
[31] ECF No. 91-5 at ¶ 13.
[32] *Id.*
[33] *Id.* at ¶ 14.
[34] ECF No. 91-1 at ¶ 35; ECF No. 91-7.
[35] ECF No. 91-1 at ¶ 35; ECF No. 91-7.
[36] ECF No. 91-5 at ¶¶ 15–17 (quotation omitted).

Hyginus to discuss those reports.[37] Hyginus recorded part of the conversation.[38] Hyginus generally denies engaging in the conduct underlying these complaints, but Hyginus does not dispute that the complaints were, in fact, made.[39] At no point in his partial recording of the conversation does Hyginus allege disparate treatment based on his race or national origin or mention any alleged discriminatory comments.[40]

After the employee-relations consultant told Daher that she had substantiated allegations of Hyginus's misconduct,[41] Daher placed Hyginus on "Progressive Discipline" later in August 2022.[42] To that end, Ochsner issued Hyginus a "Notice of Progressive Discipline" that described some of the complaints against him and notified him that he could be fired for "[a]ny further incident or performance issues":

> Anthony was issued a consult on 1/20/2022 for unprofessional behavior. On July 30, 2022, Anthony was reported as making inappropriate comments to a female nurse after asking her probing personal questions. (Ex. Are you married?) A male nurse witnessed the interaction between Anthony and the female nurse where he walked over to her to inquire if she was ok. The nurse stated that she was uncomfortable and felt the comments made by Anthony were inappropriate. An agency nurse also reported that she had a similar encounter with Anthony where his comments were inappropriate. Anthony is in violation of the Commitment to Professionalism Policy OHS.HR.001. Anthony has also struggled with offer [*sic*] support to fellow team members, being on time for work, and collaborating with other employees in other areas.
>
> Anthony is being placed on Progressive Discipline for his unprofessional behavior and lack of performance. . . . This is a final warning. Any further incident or performance issues with [*sic*] result in termination.[43]

---

[37] ECF No. 91-1 at ¶ 39; ECF No. 91-8.
[38] ECF No. 91-1 at ¶ 39; ECF No. 91-8.
[39] ECF No. 91-8; ECF No. 91-3 at 16.
[40] ECF No. 91-1 at ¶ 41; ECF No. 91-8.
[41] ECF No. 91-5 at ¶ 18.
[42] *Id.* at ¶ 19.
[43] ECF No. 91-3 at 51.

After Hyginus received that "Notice of Progressive Discipline," Hyginus had another meeting with an Ochsner employee-relations consultant.[44] The consultant told Hyginus what the "Notice of Progressive Discipline" made clear: Hyginus could be fired for any future unprofessional behavior.[45] Hyginus recorded part of the conversation.[46] At no point in the recording does Hyginus allege disparate treatment based on his race or national origin or mention any discriminatory comments.[47]

About three months after Hyginus was placed on "Progressive Discipline," in November 2022, Hyginus texted Daher claiming that he was "getting constantly discriminated on the" hospital's "6th floor west."[48] In full, Hyginus's text states—

> Good evening Katie,
>
> I'm getting constantly discriminated on the 6th floor west; and [I] don't think it's good to continue to face such humiliating embarrassments before dying patients and their family member. This has become frequent and oftentimes preventing me from rendering the care I was called to the floor to provide. I just feel [I] should bring this unfortunate experience to your notice too. I've also discussed it with Melissa [Fauci].
>
> Thank you.[49]

In a prompt response, Daher told Hyginus that she was "sorry to hear this and would like to speak with [Hyginus] about [his] concerns," and Daher scheduled a meeting with Hyginus for the following day.[50]

---

[44] ECF No. 91-1 at ¶ 44; ECF No. 91-9.
[45] ECF No. 91-1 at ¶ 44; ECF No. 91-9.
[46] ECF No. 91-1 at ¶ 44; ECF No. 91-9.
[47] ECF No. 91-1 at ¶ 46; ECF No. 91-9.
[48] ECF No. 91-3 at 59.
[49] *Id.*
[50] *Id.*

The next month, in late December 2022, a patient's mother reported that Hyginus "had loudly and repeatedly told her 'stop hurting yourself'" while the mother "was crying in the bathroom of her son's hospital room."[51] The patient's mother also reported that Hyginus "stayed in her room despite a request that he leave."[52] Fauci and Daher discussed the report with Hyginus, and Hyginus recorded the conversation.[53] At no point in the recording does Hyginus allege disparate treatment based on his race or national origin or mention any discriminatory comments.[54]

A few days later, Daher received yet another report about Hgyinus's conduct. Fauci had directed Ochsner's chaplains not to visit a colleague who was in the hospital recovering from surgery unless the colleague gave permission.[55] Despite that directive, Daher received a report that Hyginus had "interacted with" the employee without permission.[56] Hyginus denies "visit[ing]" the employee and insists the employee called out to him while he was in a hallway.[57] Although Hyginus disputes the facts underlying this report, he does not dispute that the report was made.

Daher referred both of these reports to the employee-relations department for investigation.[58] As part of that investigation, an employee-relations consultant interviewed Hyginus about the alleged incident with the patient's mother and about

---

[51] ECF No. 91-5 at ¶ 20.
[52] *Id.*
[53] ECF No. 91-1 at ¶¶ 60–65; ECF No. 91-10 .
[54] ECF No. 91-1 at ¶ 65; ECF No. 91-10.
[55] ECF No. 91-1 at ¶ 68–69; ECF No. 91-3 at 55.
[56] ECF No. 91-5 at ¶ 21.
[57] ECF No. 91-3 at 26.
[58] ECF No. 91-5 at ¶ 22.

the alleged unauthorized visit of a colleague.[59] Hyginus recorded the conversation.[60] At no point in the recording does Hyginus allege disparate treatment based on his race or national origin or mention any alleged discriminatory comments.[61] Ultimately, the employee-relations consultant concluded that Hyginus "was being dishonest when discussing his interactions with the patient's grieving mother."[62]

After learning about the consultant's conclusion, in January 2023, Daher decided to fire Hyginus "for repeated instances of unprofessional behavior towards his colleagues, particularly his female colleagues, a patient, and a patient's family member."[63] Daher did not consider Hyginus's race or national origin or any complaint he allegedly made about discrimination or harassment.[64] Hyginus never told Daher that Fauci had discriminated against him or harassed him.[65] Daher had ultimate authority to fire Hyginus; Fauci could not have fired him without Daher's approval.[66]

Daher and Fauci met with Hyginus to tell him he was being fired.[67] Hyginus recorded the meeting.[68] During the meeting, after learning that Ochsner had fired him, Hyginus asked if the EEOC had "reached out" and stated that he had "reached

---

[59] ECF No. 91-1 at ¶ 74; ECF No. 91-11.
[60] ECF No. 91-1 at ¶ 74; ECF No. 91-11.
[61] ECF No. 91-1 at ¶ 74; ECF No. 91-11.
[62] ECF No. 91-5 at ¶ 22.
[63] *Id.* at ¶ 23.
[64] *Id.* at ¶¶ 25–27.
[65] *Id.* at ¶¶ 28–29.
[66] *Id.* at ¶ 23.
[67] ECF No. 91-1 at ¶ 83.
[68] ECF No. 91-1 at ¶ 84; ECF No. 91-12.

out to them."[69] At no point in the recording does Hyginus allege disparate treatment based on his race or national origin or mention any discriminatory comments.[70]

At some unspecified point, according to Hyginus, Fauci told him to "go back to his shit hole country," and a part-time chaplain named "Barbie," "Bobbie," or "Barbara" told Hyginus to "go back where [he] came from."[71] Hyginus also claims that he was treated less favorably than someone identified only as "Linda," because Ochsner allowed "Linda" to wear scrubs but did not allow him to wear scrubs.[72]

About four months after he was fired, in May 2023, Hyginus filed an EEOC charge against Ochsner.[73] On the charge, Hyginus checked boxes indicating his belief that Ochsner had discriminated against him based on his race, color, sex, national origin, and disability, and that Ochsner had retaliated against him.[74] But in the portion of the EEOC charge asking him to briefly describe each discriminatory job action, Hyginus does not include any facts relating to his race, his national origin, his disability, or any protected activity for which he contends Ochsner retaliated against him.[75] In full, Hyginus described Ochsner's alleged discriminatory action as follows:

> I was fired on Jan 11, 2023, after all the incessant discriminatory treatment I experienced with an accusation that I visited a colleague who'd requested not to be visited (which never happened); and that I was inappropriate in my conversation with a braindead patient's mother who misquoted me saying "I said she should not hurt herself (physically)." whereas I said (as documented in patient's chat) that "her son would not want her to breakdown due to the current emotional hurt

---

[69] ECF No. 91-1 at ¶ 85; ECF No. 91-12.
[70] ECF No. 91-1 at ¶ 65; ECF No. 91-10.
[71] ECF No. 91-4 at 14 (Fauci's alleged comment); *id.* at 4 (alleged comment of "Barbie," "Bobbie," or "Barbara").
[72] *Id.* at 6–7.
[73] ECF No. 91-14.
[74] *Id.* at 1.
[75] *Id.*

she's passing through." I was invited, questioned, and harassed emotionally several times by my supervisor over issues I know absolutely nothing about and things I never said or imagined. I was accused (as reported by the HR) that I speak only to guys; whereas I was friendly with everyone as well as my colleagues. I have a witness . . . who was informed of negative things about me on the floors. I was walked out of a dying patient's room by a nurse after the patient and her husband had specifically requested my presence to help them with an advanced directive. Nurses on the sixth floor discriminate against me and would simply hang up the phone on me once they heard my voice whenever I was on-call & request another chaplain. (12/5/22).[76]

This lawsuit followed.[77] In it, Hyginus generally alleges that Ochsner "subjected [him] to harassment, discrimination, disparate treatment, and systemic racism based on his protected status as a Black African from Nigeria, which created a hostile work environment."[78] As for the many complaints lodged against him, Hyginus insists that he "was falsely accused of unprofessional conduct and making inappropriate remarks to nurses and patents," and that "Ochsner's supervisors and a group of nurses on the 6th floor engaged in a deliberate effort to sabotage [his] reputation, creating a false narrative that would lead to his termination."[79]

As for the alleged disparate treatment, Hyginus alleges that Ochsner treated him differently than Ochsner treated white employees in five principal ways. First, Hyginus alleges he was fired even though the complaints against him were "never properly investigated or substantiated," while "[s]imilarly situated Caucasian employees with complaints against them" were not reprimanded or disciplined

---

[76] *Id.* at 1 (punctuation original).
[77] ECF No. 83 (operative second amended and supplemental complaint).
[78] *Id.* at ¶ 13.
[79] *Id.* at ¶¶ 38–39.

"unless the complaints were thoroughly investigated and substantiated."[80] Second, Hyginus alleges "he was summoned almost every day, for each and every trumped-up, unsubstantiated and unverified complaint against him[,] whereas Caucasian employees were only summoned if credible evidence supported any claims against them."[81] Third, Hyginus alleges Fauci and Daher ignored his "complaints about unprofessional conduct by other employees[,] . . . especially when the complaints involved Caucasian employees."[82] Fourth, Hyginus alleges that Ochsner "forced" him to work despite "an elevator-related injury" he suffered "while on Ochsner's premises," while "similarly situated Caucasian employees who suffered injuries or illnesses were granted accommodations and had their medical expenses paid by Ochsner."[83] Fifth and finally, Hyginus alleges that Fauci "actively frustrated" his professional aspirations "to become a nurse" by "drastically altering his schedule," while Ochsner "consistently provided" "similarly situated Caucasian chaplains . . . the flexibility needed to attend classes for their professional aspirations."[84]

As for the alleged harassment and hostile work environment, Hyginus alleges that Fauci told him he should "return to Africa and back to Nigeria, where he came from" in response to "concerns" he raised about alleged discrimination.[85] Hyginus adds that he was "mocked by Caucasian colleagues" and that "[t]he relentless discrimination and humiliation created a work atmosphere that was intolerable."[86]

---

[80] *Id.* at ¶¶ 19–20.
[81] *Id.* at ¶ 21.
[82] *Id.* at ¶ 22.
[83] *Id.* at ¶¶ 26, 29, 30.
[84] *Id.* at ¶ 32.
[85] *Id.* at ¶ 33 (alterations and quotation omitted).
[86] *Id.*

As for the alleged retaliation, Hyginus says that he "made an internal complaint and subsequently filed a complaint with the [EEOC], alleging racial discrimination, disparate treatment, harassment, and a hostile work environment at Ochsner."[87] Hyginus alleges that Ochsner fired him "[s]hortly after [his] EEOC complaint was filed,"[88] even though the undisputed record confirms that Hyginus did not file that EEOC complaint until over four months after Ochsner fired him.[89]

Based on these allegations and others, Hyginus asserts causes of action against Ochsner for disparate-treatment discrimination and hostile-work-environment harassment under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Louisiana Employment Discrimination Law ("LEDL"), LA. STAT. ANN. § 23:332(A)(1)–(2), and for retaliation under Title VII only.[90]

Now, Ochsner moves for summary judgment dismissing all of Hyginus's claims.[91] Hyginus opposes.[92]

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v.*

---

[87] *Id.* at ¶ 35.

[88] *Id.*

[89] *See* ECF No. 91-14 (May 22, 2023 EEOC charge referencing January 11, 2023 firing)

[90] ECF No. 83 at ¶¶ 41–58.

[91] ECF No. 91.

[92] ECF No. 97.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant will bear the burden of proof at trial, as Hyginus will here, the movant meets its initial burden by pointing to "an absence of evidence" supporting the nonmovant's claim. *Id.* at 325. The movant "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)  (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing Fed. R. Civ. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported

assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.  ANALYSIS

Ochsner moves for summary judgment dismissing Hyginus's claims for discrimination under Title VII and the LEDL, for harassment under Title VII and the LEDL, and for retaliation under Title VII. Ochsner contends that there is no genuine dispute that Hyginus failed to exhaust administrative remedies on his Title VII claims and that Hyginus failed to comply with the notice requirement on his LEDL claims. Ochsner adds that Hyginus lacks evidence from which a reasonable jury could find for him on any claim. The Court considers Title VII exhaustion and the LEDL's notice requirement before turning to conduct a claim-by-claim analysis.

### A.    Title VII Exhaustion

The Court grants summary judgment dismissing all of Hyginus's Title VII claims because there is no genuine dispute that he failed to exhaust them. Hyginus failed to file an EEOC charge with allegations sufficiently like or related to the allegations underlying the claims of race- and national-origin-based discrimination, harassment, and retaliation that he brings here. Hyginus's EEOC charge does not mention that he is Black or that he is from Nigeria; does not identify any activity protected by Title VII; does not allege anyone at Ochsner made any harassing comments to him based on his race or his national origin; and does not claim any similarly situated non-Black or non-Nigerian employee was treated better than he was. So none of Hyginus's claims against Ochsner falls within the scope of the EEOC investigation that could reasonably be expected to grow out of his EEOC charge.

Before suing, a Title VII plaintiff like Hyginus must exhaust administrative remedies by filing a charge with the EEOC within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Administrative exhaustion is neither a jurisdictional requirement nor "merely a procedural gotcha issue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (quotation omitted). Instead, it "is a mainstay of proper enforcement of Title VII remedies" that "facilitate[s] the [EEOC's] investigat[ory] and conciliatory functions and . . . recognize[s] [the EEOC's] role as primary enforcer of anti-discrimination laws." *Id.* (quotation omitted).

To satisfy the exhaustion requirement, Hyginus's Title VII claims "generally must arise out of" his EEOC charge. *Id.* (citation omitted). This requirement furthers "a key purpose" of the EEOC charge—giving employers like Ochsner "notice of the existence and general substance of discrimination allegations." *Id.* (citation omitted).

To decide if Hyginus exhausted administrative remedies on his Title VII claims, the Court construes his EEOC charge "in its broadest reasonable sense and ask[s] whether the claim[s] can reasonably be expected to grow out of" that charge. *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quotation omitted). Of course, there is no "magic words" requirement. *See id.* at 168. And neither "verbal precision" nor "finesse in the charge" is required. *Id.* (quotation and alterations omitted). Even so, Hyginus's Title VII claims "can include only those allegations that are like or related to those allegations contained in [his] EEOC charge . . . ." *Id.* at 167 (quotation and alterations omitted). The Court "will not consider claims" Hyginus did not "assert[ ] before the EEOC or that do not fall within the scope of the EEOC investigation [that] can reasonably be expected to grow out of the charge of discrimination" that Hyginus "ma[de] before the EEOC." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (per curiam) (quotation omitted).

***Discrimination.*** Hyginus's Title VII claims against Ochsner for disparate-treatment discrimination based on his race and national origin cannot "reasonably be expected to grow out of" his EEOC charge. *Id.* (quotation omitted). Those claims are based on the general allegation that, because Hyginus is Black and Nigerian, Ochsner treated him worse than Ochsner treated similarly situated white employees. But

Hyginus's EEOC charge does not feature facts that would notify Ochsner or the EEOC "of the existence and general substance" of that allegation. *Ernst*, 1 F.4th at 337 (citation omitted). The charge does not mention that Hyginus is Black or from Nigeria.[93] Nor does the charge include facts suggesting that Hyginus believed that Ochsner treated him differently than it treated similarly situated white employees.[94] True, Hyginus checked the boxes on the charge that correspond to discrimination based on race and national origin.[95] But merely checking the box on the charge form that corresponds to a broad category of unlawful employment practices, without including any supporting facts about that alleged unlawful employment practice, is insufficient to administratively exhaust a Title VII claim. *See Givs v. City of Eunice*, 512 F. Supp. 2d 522, 537 (W.D. La. 2007), *aff'd*, 268 F. App'x 305 (5th Cir. 2008) (per curiam).[96] At bottom, the charge includes no facts reasonably related to the allegation that Ochsner discriminated against Hyginus based on his race or his national origin by treating him worse than Ochsner treated similarly situated white employees. So

---

[93] ECF No. 91-14 at 1–3.

[94] *Id.*

[95] *Id.* at 1.

[96] *Accord, e.g.*, *Sims v. La. State*, No. 22-CV-2609, 2023 WL 405443, at *3–4 (E.D. La. Jan. 25, 2023) (Africk, J.) (holding that plaintiff did not exhaust claim for racial discrimination, despite checking the "race" box on the charge, because plaintiff "ma[de] no factual allegations pertaining to racial discrimination"); *Doe v. Merritt Hospitality, LLC*, 353 F. Supp. 3d 472, 479 (E.D. La. 2018) (Ashe, J.) (holding that plaintiff did not exhaust claim for sexual harassment, despite checking the box corresponding to sex discrimination on the charge, because he did not "mention sexual harassment in his description of his claim"); *Lawson v. Lifepoint Hosps., Inc.*, No. 16-CV-414, 2017 WL 4365814, at *6 (W.D. La. Sept. 29, 2017) (holding that plaintiff did not exhaust retaliation claim, despite checking the "retaliation" box on the charge, "because she did not identify any facts, particularly the alleged protected activity, supporting her claim"); *Williams v. Health Tex. Provider Network*, No. 3:16-CV-391, 2017 WL 2608813, at *3 (N.D. Tex. June 1, 2017) (holding that plaintiff did not exhaust claim for retaliation because he "merely checked the box marked 'retaliation,' with no further explanation"), *adopted*, 2017 WL 2616952 (N.D. Tex. June 15, 2017); *Self v. Bnsf Ry. Co.*, No. 14-CA-618-SS, 2016 WL 543245, at *7 (W.D. Tex. Feb. 9, 2016) (holding that plaintiff did not exhaust claim for retaliation, despite checking the retaliation box on the charge form, because "he failed to allege any specific facts concerning retaliation . . . or even mention[ ] what protected activity he engaged in").

the scope of the charge before the EEOC and the scope of the EEOC's investigation "could not reasonably be expected to reach" the disparate-treatment discrimination claims that Hyginus asserts here. *Chhim*, 836 F.3d at 472.

***Harassment.*** Hyginus's Title VII claims against Ochsner for hostile-work-environment harassment based on derogatory comments about his race and national origin cannot "reasonably be expected to grow out of" his EEOC charge. *Id.* (quotation omitted). Those claims are based on the vague allegation that Hyginus's "Caucasian colleagues" made derogatory remarks about his race and national origin, and on the more specific claims that his supervisor, Fauci, told him to "go back to his shit hole country," and that a part-time chaplain named "Barbie," "Bobbie," or "Barbara" told him to "go back where [he] came from."[97] The EEOC charge does not feature facts that would notify Ochsner or the EEOC "of the existence and general substance" of those claims. *Ernst*, 1 F.4th at 337 (citation omitted). As noted above, the charge does not mention that Hyginus is Black or from Nigeria.[98] Nor does the charge mention any harassing comment made by anyone at Ochsner about Hyginus's race or his national origin.[99] It is true that the charge states that Hyginus was "harassed emotionally several times by [his] supervisor over issues [he] know[s] absolutely nothing about and things [he] never said or imagined . . . ."[100] But the charge includes no facts elaborating on how the alleged harassment occurred or otherwise indicating

---

[97] ECF No. 91-4 at 14 (Fauci's alleged comment); *id.* at 4 (alleged comment of "Barbie," "Bobbie," or "Barbara").

[98] ECF No. 91-14 at 1–3.

[99] *Id.* at 1.

[100] *Id.*

that this alleged harassment was based on Hyginus's race or his national origin.[101]

And the mere fact that Hyginus checked the boxes on the charge form that correspond

to race and national-original discrimination is insufficient to exhaust his harassment

claim. *See, e.g.*, *Givs*, 512 F. Supp. 2d at 537. Ultimately, the charge lacks facts

reasonably related to the allegation that Hyginus endured harassment through

derogatory comments about his race or national origin made by Fauci, by a part-time

chaplain named "Barbie," "Bobbie," or "Barbara," or by Hyginus's "Caucasian

colleagues."[102] So the scope of the charge before the EEOC and the scope of the

EEOC's investigation "could not reasonably be expected to reach" the hostile-work-

environment harassment claims Hyginus asserts here. *Chhim*, 836 F.3d at 472.

**Retaliation.** Hyginus's Title VII retaliation claims cannot "reasonably be

expected to grow out of" his EEOC charge. *Id.* (quotation omitted). Those claims are

based on the allegation that Ochsner fired Hyginus "[s]hortly after" he filed an EEOC

charge.[103] But the EEOC charge lacks facts that would notify Ochsner or the EEOC

"of the existence and general substance" of that allegation. *Ernst*, 1 F.4th at 337

(citation omitted). The charge does not mention any earlier-filed EEOC charge or any

protected activity Hyginus engaged in.[104] There are no facts in the charge that would

reasonably be expected to lead the EEOC to investigate whether Ochsner had fired

Hyginus in retaliation for complaining about discrimination based on his race or

---

[101] *Id.*

[102] ECF No. 83 at ¶ 33.

[103] ECF No. 83 at ¶ 35.

[104] ECF No. 91-14 at 1–3.

national origin.[105] And although Hyginus checked the box corresponding to "retaliation" on the charge form,[106] that alone "does not satisfy the requirement of administrative exhaustion," because Hyginus "did not identify any facts, particularly the alleged protected activity, supporting [his] claim." *Lawson*, 2017 WL 4365814; *accord Givs*, 512 F. Supp. 2d at 537; *Williams*, 2017 WL 2608813, at *3; *Self*, 2016 WL 543245, at *7. In sum, the charge includes no facts reasonably related to the allegation that Ochsner retaliated against Hyginus for complaining about racial and national-origin discrimination. So the scope of the charge before the EEOC and the scope of the EEOC's investigation "could not reasonably be expected to reach" the retaliation claims that Hyginus asserts here. *Chhim*, 836 F.3d at 472.

Hyginus fails to rebut any of Ochsner's exhaustion arguments.[107] He makes no attempt to show that his EEOC charge includes allegations "like or related to" the allegations underlying any Title VII claim he pursues here.[108] *Davenport*, 891 F.3d at 168 (quotation omitted). Nor does he dispute that merely checking the box corresponding to a particular type of unlawful employment practice is insufficient to exhaust a Title VII claim.[109] Instead, he argues only that he "met" the exhaustion requirement "by filing his EEOC complaint" timely and receiving a right-to-sue letter.[110] But he is incorrect. A Title VII claim is not exhausted unless "the claim can reasonably be expected to grow out of" the EEOC charge. *Id.* at 167 (quotation

---

[105] *Id.*
[106] *Id.* at 1.
[107] ECF No. 97 at 1–8.
[108] *Id.*
[109] *Id.*
[110] *Id.* at 4–5.

omitted). Hyginus fails to respond to Ochsner's argument that none of his claims "can reasonably be expected to grow out of" his EEOC charge, *id.* at 167 (quotation omitted), and so he has forfeited any argument that he satisfied that standard, *see Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021) (explaining the numerous ways a party can forfeit an argument by failing to adequately brief it).

### B.    LEDL Notice Requirement

The Court grants summary judgment dismissing any discrimination and harassment claims that Hyginus intends to assert under the LEDL because there is no genuine dispute that Hyginus failed to satisfy the LEDL's notice requirement.

Before suing Ochsner under the LEDL, Hyginus had to provide Ochsner with 30 days' written notice. *See* LA. STAT. ANN. § 23:303(C). An EEOC charge can satisfy that notice requirement. *See Fontenot v. Bd. of Supervisors of La. State Univ.*, No. 22-30483, 2023 WL 4396493, at *2 (5th Cir. July 7, 2023) (per curiam). But "notice is limited to the discrimination detailed in the EEOC charge." *Id.* (quotation omitted). To decide if Hyginus's EEOC charge satisfies the LEDL's notice requirement, the Court looks to Title VII exhaustion principles. *See id.* (citation omitted). As noted in section III(A), Hyginus failed to exhaust his Title VII claims because they cannot "reasonably be expected to grow out of" his EEOC charge. *Chhim*, 836 F.3d at 472 (quotation omitted). Because Hyginus's LEDL and Title VII claims stem from the same alleged facts, Hyginus fails to satisfy the LEDL's notice requirement for the same reasons he fails to satisfy Title VII's administrative-exhaustion requirement.

Hyginus offers no response to Ochsner's argument that his LEDL claims should be dismissed for failure to satisfy the LEDL's notice requirement.[111] In fact, Hyginus does not mention the LEDL or make any argument opposing dismissal of any of his LEDL claims, specifically.[112] So Hyginus has abandoned his LEDL claims and forfeited any argument opposing dismissal of them. *See, e.g.*, *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff "abandoned" a claim by failing to defend against its dismissal in response to dispositive motions); *Batterton v. Tex. Gen. Land. Off.*, 783 F.2d 1220, 1224–25 (5th Cir. 1985) (a pleaded theory was "waived" when it was not raised in opposition to a motion for summary judgment).

## C.    Discrimination

In sections III(A)–(B), the Court granted summary judgment on Hyginus's Title VII claims for failure to exhaust administrative remedies and on Hyginus's LEDL claims for failure to satisfy the 30-day notice requirement. But even if Hyginus had administratively exhausted his Title VII discrimination claims and satisfied the LEDL's 30-day notice requirement, the Court would still grant summary judgment dismissing his discrimination claims for two more independent reasons. First, Hyginus fails to cite summary-judgment evidence from which a reasonably jury could find that Ochsner treated him less favorably than it treated any similarly situated non-Nigerian or non-Black employee. Second, Hyginus fails to cite summary-judgment evidence from which a reasonable jury could find that Ochsner's proffered legitimate, nondiscriminatory reason for firing him was pretext for discrimination.

---

[111] ECF No. 97 at 1–8.
[112] *Id.*

24

The same analysis controls the Court's consideration of Hyginus's discrimination claims under Title VII and the LEDL. *See Clark v. City of Alexandria*, 116 F.4th 472, 485–86 (5th Cir. 2024). The Court evaluates those claims under the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because Hyginus does not cite any direct evidence of discrimination by Ochsner.[113] *See Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021).

At step one of *McDonnell Douglas*, Hyginus must make a *prima facie* case of intentional discrimination. *See id.* If Hyginus makes a *prima facie* case, then the "burden of production" shifts to Ochsner "to proffer a legitimate, nondiscriminatory reason for [its] action." *Id.* at 281–82 (citation omitted). And if Ochsner does that, "the presumption of discrimination disappears," and Hyginus "must then produce substantial evidence indicating that the proffered legitimate, nondiscriminatory reason is a pretext for discrimination." *Id.* at 282 (quotation and alterations omitted).

Hyginus's discrimination claim fails at the first step of the *McDonnell Douglas* framework because he fails to point the Court to evidence from which a reasonable jury could find that he made a *prima facie* case of discrimination.  To make a *prima facie* case of discrimination on summary judgment, Hyginus must point the Court to evidence showing that (1) he belongs to a protected group; (2) he was qualified for his

---

[113] For two independent reasons, Fauci's alleged derogatory comments are not direct evidence that removes this case from the *McDonnell Douglas* framework. First, Hyginus admits in his summary-judgment response that he must rely on the *McDonnell Douglas* framework. *See* ECF No. 97 at 5 (Hyginus admitting that he "must show" a *prima facie* case of discrimination under the *McDonnell Douglas* framework). Second, Hyginus fails to cite summary-judgment evidence showing that Fauci's alleged derogatory comments were "proximate in time" to his firing; that Fauci had "authority over" the decision to fire him; and that the alleged comments "related to" Daher's decision to fire him. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 581 (5th Cir. 2020) (quotation omitted).

job; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside his protected group or treated less favorably than other similarly situated employees outside his protected group. *See Clark*, 116 F.4th at 486.

Hyginus fails on the fourth prong. He does not cite evidence showing that he was replaced by someone who is not Black or Nigerian or that he was treated less favorably than a similarly situated Ochsner employee who is not Black or Nigerian. *See Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024). To be "similarly situated," the coworker must "hold the same job or hold the same job responsibilities as" Hyginus; "must share the same supervisor or have his employment status determined by the same person as" Hyginus; and "must have a history of violations or infringements similar to that of" Hyginus. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quotation and alterations omitted). Hyginus's response does not identify a "similarly situated" non-Black or non-Nigerian Ochsner employee.[114] So Hyginus fails to make a *prima facie* case of discrimination, and Ochsner is entitled to summary judgment at step one of *McDonnell Douglas*.

Even if Hyginus had made a *prima facie* case of discrimination, his discrimination claim would fail at the third step of *McDonnell Douglas* because Hyginus lacks evidence that Daher's proffered legitimate, nondiscriminatory reason for firing him was pretext for discrimination. Daher fired Hyginus "for repeated instances of unprofessional behavior toward his colleagues, particularly his female

---

[114] ECF No. 97 at 1–8. Hyginus's response does not cite evidence from which a reasonable jury could find that the employee identified only as "Linda" was similarly situated to him. *Id.*

colleagues, a patient, and a patient's family member."[115] Hyginus does not dispute that Daher's stated reason for firing him is sufficiently "clear and reasonably specific" to qualify as a legitimate, nondiscriminatory reason. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) (quotation omitted). Nor could he. *See Henderson v. Lowes Home Ctrs., LLC*, 2023 WL 2021862, at * 3 (W.D. La. Feb. 15, 2023) (concluding that "unprofessional behavior" was a legitimate, nondiscriminatory reason). To avoid summary judgment, then, Hyginus must "produce substantial evidence" showing that Daher's stated reason for firing him "is a pretext for discrimination" by pointing to "evidence of disparate treatment or by showing that [Daher's] proffered explanation is false or unworthy of credence." *Id.* (quotation omitted). Hyginus fails to do so: He fails to show disparate treatment because, as explained above, he has not cited summary-judgment evidence identifying a similarly situated comparator. And he fails to point to evidence that Daher's stated reason for firing him is "false or unworthy of credence." *Id.* (quotation omitted).[116] So Ochsner is entitled to summary judgment on Hyginus's discrimination claim at step three of *McDonnell Douglas*.[117]

---

[115] ECF No. 91-5 at ¶ 24.

[116] It is immaterial that Hyginus disputes the facts underlying the reports that led to his progressive discipline and ultimate firing. "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Hyginus fails to cite summary-judgment evidence creating a genuine dispute that (1) Ochsner received the reports; and (2) Daher, the Ochsner employee with "ultimate authority" to fire Hyginus, believed that Hyginus had repeatedly engaged in unprofessional behavior based on corroborated reports and investigations into Hyginus's conduct. ECF No. 91-5 at ¶¶ 23–24; *see Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 257 (5th Cir. 2020) (per curiam) (concluding that employer was entitled to summary judgment at pretext stage of *McDonnell Douglas* because employee failed to point to evidence creating a genuine dispute that the ultimate decisionmakers believed that the employee had violated company policy based on an investigation).

[117] Hyginus has abandoned any independent claims for discrimination and retaliation based on his being placed on progressive discipline because he fails to brief any such claim in opposition to Ochsner's motion. *See Black*, 461 F.3d at 588 n.1; *Batterton*, 783 F.2d at 1224–25.

### D.    Harassment

In sections III(A)–(B), the Court granted summary judgment on Hyginus's Title VII claims for failure to exhaust administrative remedies and on Hyginus's LEDL claims for failure to satisfy the 30-day notice requirement. But even if Hyginus had exhausted his Title VII harassment claims and satisfied the LEDL's 30-day notice requirement, the Court would still grant summary judgment on his harassment claims for an independent reason: Hyginus fails to cite evidence from which a reasonable jury could find that the alleged harassment of him was sufficiently severe or pervasive to alter the terms or conditions of his employment.

The same analysis controls the Court's consideration of Hyginus's hostile-work-environment harassment claims under both Title VII and the LEDL. *See Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 223 (5th Cir. 2015) (per curiam).

To establish that harassment altered the terms or conditions of his employment, Hyginus must point the Court to summary-judgment evidence showing that the harassing conduct was "both objectively and subjectively offensive." *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (quotation omitted). And to decide if the harassing conduct created an "objectively offensive" work environment for Hyginus, the Court considers "the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with [Hyginus's] work performance." *Id.* at 1066–67 (quotation omitted).

Hyginus cites no evidence from which a reasonable jury could find that the alleged harassment of him was sufficiently severe or pervasive to alter the terms or conditions of his employment under the totality of the circumstances.[118] In fact, in his summary-judgment response, Hyginus cites no record evidence that speaks to any relevant totality-of-the-circumstances consideration.[119] *See id.* at 1066–67. For this reason alone, Ochsner is entitled to summary judgment dismissing all of Hyginus's hostile-work-environment harassment claims under both Title VII and the LEDL.

To the extent that Hyginus intends to rely on unspecified "[d]erogatory comments about his national origin" to try to create a genuine dispute of material fact, his effort fails.[120] Such "vague and generalized" assertions of harassment are insufficient to create a genuine dispute of material fact. *Barkley v. Singing River Elec Power Ass'n*, 433 F. App'x 254, 258 (5th Cir. 2011); *see also, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (holding that "conclusory assertions" of harassment unsupported by "concrete examples" were insufficient to create a genuine dispute of material fact); *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 677 (4th Cir. 2011) (holding that testimony that a racial slur was used "a bunch of different times" was insufficient to create a genuine dispute of material fact because it was "wholly unsupported by any detail, context, examples, or time frame" (quotation omitted)).

Hyginus's summary-judgment response does not mention the one-time derogatory comment of "Barbie," Bobbie," or "Barbara" that Hyginus should "go back

---

[118] ECF No. 97 at 6.

[119] *Id.*

[120] *Id.*

to where [he] came from."[121] So Hyginus has forfeited any argument that this comment creates a genuine dispute of material fact. *See Rollins*, 8 F.4th at 397–98. Forfeiture aside, Hyginus does not cite summary-judgment evidence from which a reasonable jury could find that this one-time remark interfered with his work performance or was physically threatening or humiliating. Because this remark was "not physically threatening," and because Hyginus does not point the Court to evidence "that he was humiliated by [the remark]," there is no genuine dispute on this record that the remark "was merely an offensive utterance insufficient to establish a hostile work environment." *Price*, 88 F.4th at 1067 (quotation omitted).

Finally, Fauci's "shit hole country" comment does not create a genuine dispute of material fact for at least two independent reasons. First, as with the "go back to where you came from" comment by "Barbie," "Bobbie," or "Barbara," Hyginus fails to cite summary-judgment evidence from which a reasonable jury could find that Fauci's one-time "shit hole country" comment was physically threatening or humiliating or that it interfered with Hyginus's work performance.[122] So there is no genuine dispute that Fauci's one-time comment was merely "an offensive utterance insufficient to establish a hostile work environment." *Price*, 88 F.4th at 1067 (quotation omitted).[123]

---

[121] ECF No. 91-4 at 14 (Fauci's alleged comment); *id.* at 4 (alleged comment of "Barbie," "Bobbie," or "Barbara").

[122] ECF No. 97 at 1–8.

[123] It is true that "a single incident of harassment, if sufficiently severe," can establish a hostile work environment. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007). For example, the Fifth Circuit has held that a single incident of a supervisor directly calling an employee a "Lazy Monkey A__ N____" in front of fellow employees was sufficiently severe to state a plausible hostile-work-environment claim that survived a Rule 12(b)(6) motion. *See Woods v. Cantrell*, 29 F.4th 284, 285–86 (5th Cir. 2022); *see also Thomas v. Cook Children's Health Care Sys.*, No. 22-10535, 2023 WL 5972048, at *3 (5th Cir. Sept. 14, 2023) (per curiam) ("[T]he single use of 'an unambiguously racial epithet' by a supervisor in the presence of subordinates can support a hostile-work-environment

Second, Fauci's "shit hole country" comment does not preclude summary judgment for the independent reason that Ochsner "establish[es] beyond peradventure," *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 68 (5th Cir. 2020) (quotation omitted), both elements of the *Ellerth/Faragher* affirmative defense. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998)*; Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Under the *Ellerth/Faragher* affirmative defense, an employer like Ochsner is not liable for harassment by a supervisor like Fauci if the employer makes two showings: first, that the employer "exercised reasonable care to prevent and correct promptly" the harassing behavior; and second, that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *E.E.O.C. v. Boh Bros. Cosntr. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (en banc) (quotation omitted).

Ochsner makes both showings beyond peradventure. Ochsner makes the first showing because Ochsner points to evidence that it has a clear policy prohibiting harassment based on race or national origin,[124] and there is no claim that Ochsner's policy "is insufficient or unreasonable." *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 164 (5th Cir. 2007). And Ochsner makes the second showing because Ochsner establishes that Hyginus unreasonably failed to report Fauci's alleged "shit hole country" comment and failed to take advantage of the

---

claim." (quoting *Woods*, 29 F.4th at 287)). But this line of precedent does not apply here, because Hyginus does not direct the Court to any evidence that Fauci (or anyone else at Ochsner) called him "an unambiguously racial epithet" along the lines described in *Woods*. *See* 29 F.4th at 285–86.

[124] *See* ECF No. 91-3 at 41–44; *id.* at 42 (prohibition on harassment).

corrective opportunities provided by Ochsner's policy.[125] For his part, Hyginus makes no mention of the *Ellerth/Faragher* affirmative defense in his summary-judgment response and otherwise makes no attempt to show that the defense does not apply for any reason.[126] So Hyginus has forfeited any argument that Ochsner failed to carry its burden to establish the defense beyond peradventure. *See Rollins*, 8 F.4th at 397–98.

### E.    Retaliation

In sections III(A)–(B), the Court granted summary judgment dismissing all of Hyginus's Title VII claims on exhaustion grounds. But even if Hyginus exhausted his Title VII retaliation claims, the Court would still grant summary judgment dismissing them for an independent reason:[127] Hyginus fails to cite evidence from which a reasonable jury could find that Ochsner's legitimate, nonretaliatory reason for firing him—a pattern of unprofessional conduct—was pretext for retaliation.

The Court assumes—without deciding—that Hyginus makes a *prima facie* case of retaliation under the three-step *McDonnell Douglas* framework. *See Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 430 (5th Cir. 2023). So the burden shifts to Ochsner to offer a legitimate, nonretaliatory reason for firing Hyginus. *See Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652–53 (5th Cir. 2025).

---

[125] *See id.* at 43 (reporting procedures); ECF No. 91-3 at 9 (testimony that Hyginus knew of Ochsner's reporting procedures but did not use them).

[126] ECF No. 97 at 1–8.

[127] It is uncontested that Hyginus asserts a retaliation claim under Title VII only. *See* ECF No. 91-2 at 17 n.1 (Ochsner clarifying that Hyginus states a retaliation claim under Title VII only); ECF No. 97 at 1–8 (Hyginus not contesting Ochsner's clarification). To the extent Hyginus intends to assert a retaliation claim under the LEDL, however, it fails because, "[b]ased on the plain text of the statute, there is no  cause of action for retaliation for opposing racial discrimination under the LEDL." *Monette v. Walgreen Co.*, No. 24-CV-1272, 2024 WL 4528156, at *3 (E.D. La. Oct. 18, 2024) (Vance, J.).

Ochsner meets that burden of production because, as explained in section III(C) of this order and reasons, Ochsner points the Court to evidence that Daher fired Hyginus "for repeated instances of unprofessional behavior toward his colleagues, particularly his female colleagues, a patient, and a patient's family member."[128] "As a result," the burden shifts back to Hyginus to show that Ochsner's reason is "a pretext for retaliation." *Id.* at 653 (quotation and alterations omitted).

Hyginus fails to carry that burden. To create a genuine dispute of material fact at the pretext stage of *McDonnell Douglas*, Hyginus must cite summary-judgment evidence showing that Ochsner would not have fired him "but for" Ochsner's "retaliatory motive." *Id.* (quotation and alterations omitted). "Specifically," Hyginus "must show a conflict in substantial evidence as to but-for causation to avoid summary judgment." *Id.* (quotation and citation omitted). "Temporal proximity alone is not enough." *Id.* (citation omitted). But that is all Hyginus has. His opposition— charitably construed—points only to the seven-week gap between his November 2022 text to Fauci and his firing in January 2023 as evidence of pretext.[129] Timing aside, Hyginus cites nothing supporting an inference of pretext.[130] So Hyginus fails to "show a conflict in substantial evidence as to but-for causation." *Id.* (quotation and citation omitted). That means Ochsner is entitled to summary judgment dismissing Hyginus's retaliation claim at the pretext stage of the *McDonnell Douglas* framework.

---

[128] ECF No. 91-5 at ¶ 24.

[129] ECF No. 97 at 1–2.

[130] ECF No. 97 at 4. For his retaliation claim, Hyginus's only citations to the record relate to exhaustion—not to the merits. *See id.* at 4–5 (citing ECF No. 91-14 to support erroneous argument that Hyginus exhausted administrative remedies by timely filing his EEOC charge).

\*    \*    \*

To sum up: The Court grants summary judgment *in toto*. Hyginus's Title VII claims fail because he did not exhaust them. And he forfeited any argument that he exhausted them by failing even to argue that any of his Title VII claims could reasonably be expected to grow out of his EEOC charge. Hyginus's LEDL claims fail because he did not satisfy the 30-day notice requirement. And he abandoned all of his LEDL claims by failing to make any argument opposing dismissal of them. But even if he had exhausted his Title VII claims and not forfeited his anti-exhaustion arguments, and even if he had satisfied the LEDL's notice requirement and not abandoned his LEDL claims, each claim fails on the merits. His discrimination claims fail because he fails to create a genuine dispute of material fact at the *prima-facie*-case and pretext stages of *McDonnell Douglas*. His harassment claims fail because he cites no evidence from which a reasonable jury could find that the alleged harassment of him was severe or pervasive. And his retaliation claims fail because he cites no evidence from which a reasonable jury could find that Ochsner's legitimate, nonretaliatory reason for firing him was pretext for unlawful retaliation.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Ochsner's motion[131] for summary judgment is **GRANTED**. All of Hyginus's claims are **DISMISSED WITH PREJUDICE**. A final judgment will follow in accordance with Federal Rule of Civil Procedure 58.

New Orleans, Louisiana, this 23rd day of July, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[131] ECF No. 91.